IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ARON WELLS, | ) |
|         Plaintiff, | )         4:05cv3273 |
| vs. | )         MEMORANDUM AND ORDER |
| BRENDA FISHER, et al., | ) |
|         Defendants. | ) |

This matter is before the court on the defendants' unopposed Motions for Extension of the Summary Judgment Deadline (Filing Nos. 52 and 53), and the defendants' Motion for Summary Judgment (Filing No. 55). The parties have filed briefs and evidence in support of, and in opposition to, the summary judgment motion.

**Background**

The plaintiff, Aron David Wells, who is represented by counsel, filed this action as a pretrial detainee in the custody of the Lancaster County Jail, which is operated by defendant-Lancaster County, Nebraska. In his Second Amended Complaint (Filing No. 26), the plaintiff asserts federal civil rights claims pursuant to 42 U.S.C. § 1983, alleging deliberate indifference to his serious medical needs, in violation of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution and Eighth Amendment standards.[1] The plaintiff has also named as defendants, in their individual and official capacities:

---

[1] The Eighth Amendment's prohibition of cruel and unusual punishment applies only "after conviction and sentence." Graham v. Connor, 490 U.S. 386, 393 & n. 6 (1989). Pretrial detainees are not convicted prisoners and, therefore, their rights do not arise under the Eighth Amendment. Instead, their rights arise under the Due Process Clause of the Fourteenth Amendment. Butler v. Fletcher, 465 F.3d 340, 344 (8th Cir. 2006). Nevertheless, a pretrial detainee's claim of constitutionally deficient medical care is analyzed much the same as a prisoner's Eighth Amendment claim of deliberate indifference. Id. at 344-45; Vaughn v. Greene County; 438 F.3d 845, 850 (8th Cir. 2006).

Michael Thurber, Director of the Lancaster County Jail; Brenda Fisher, a Corrections Specialist who, among other duties, processes inmate grievances at the Jail; and two private physicians, Dr. James Fosnaugh and Dr. Jeanette Masek, who, under contract with Lancaster County, provide medical services to inmates at the Jail.

## Summary Judgment Standard

Summary judgment is "an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327(1986). The court must examine the record in the light most favorable to the nonmoving party. See, e.g., Woods v. DaimlerChrysler Corp., 409 F.3d 984, 990 (8th Cir. 2005) ("Summary judgment is appropriate if viewing the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.").

The proponent of a motion for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. at 323. In response, the opponent must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis in original). A "genuine" issue of material fact is more than "some metaphysical doubt as to the material facts." Id. at 586.

"[T]he mere existence of some alleged factual dispute between the parties is not sufficient by itself to deny summary judgment as a matter of law .... Instead, 'the dispute

must be outcome determinative under prevailing law.'" Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666 (8th Cir. 1992) (citations omitted). Accord Dico, Inc. v. Amoco Oil Co., 340 F.3d 525, 529 (8th Cir. 2003). "If the evidence is merely colorable ... or is not sufficiently probative ... summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).

The court may not weigh the evidence, determine credibility, or decide the truth of any factual matter in dispute. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249; Tatum v. City of Berkeley, 408 F.3d 543, 549 (8th Cir. 2005). However, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. at 249. Accord Johnson v. Hamilton, 452 F.3d 967, 972 (8th Cir. 2006) ("A party opposing summary judgment is not permitted to merely rest on his pleadings but must instead set forth sufficient evidence from which a reasonable jury could find in his favor on all elements of his claims.").

**Deliberate Indifference**

Prison officials must provide humane conditions of confinement, including adequate food, clothing, shelter, and medical care. Farmer v. Brennan, 511 U.S. 825, 832 (1994). A prisoner's rights are violated if prison officials show "deliberate indifference" to a prisoner's "serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104-07 (1976).

More specifically, to support his § 1983 claim against the defendants, the plaintiff must show that he suffered objectively serious medical needs, and that the defendants actually knew of, but deliberately disregarded, those needs. Farmer v. Brennan, 511 U.S. at 832; Estelle v. Gamble, 429 U.S. at 104-07; Johnson v. Hamilton, 452 F.3d 967, 972-73 (8th Cir. 2006). See also Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997): "[A]n

inmate must show both an objective element, that the deprivation was sufficiently serious, and a subjective element, that the defendant acted with a sufficiently culpable state of mind." Id.

That "sufficiently culpable state of mind," i.e., deliberate indifference, means that the defendant must have both been aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and the defendant must also have actually drawn the inference. Farmer v. Brennan, 511 U.S. at 837. Deliberate indifference describes a mental state more blameworthy than negligence. "Mere negligence does not rise to a constitutional violation." Johnson v. Hamilton, 452 F.3d at 973. A plaintiff is not required to show that a defendant acted for the very purpose of causing harm or with knowledge that harm would certainly result. Farmer v. Brennan, 511 U.S. at 835. However, "deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." Olson v. Bloomberg, 339 F.3d 730, 736 (8th Cir. 2003). See also Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003): "Deliberate indifference is 'a state of mind that is the equivalent of criminal recklessness.'" (Citation omitted.) Accord Drake ex rel. Cotton v. Koss, 445 F.3d 1038, 1042 (8th Cir. 2006) ("Deliberate indifference is akin to criminal recklessness and requires something more than mere negligent misconduct."); Phillips v. Jasper County Jail, 437 F.3d 791, 795 (8th Cir. 2006).

### The Record

Mr. Wells has spent many short periods of confinement at the Lancaster County Jail, his last ending on December 29, 2005. Three years earlier, while in the Jail in December of 2002, the plaintiff first learned that he had tested positive for the Human Immunodeficiency Virus ("HIV").

As recounted in the Affidavit of Ina Thiel, Assistant Nursing Director of the Lancaster County Department of Corrections, and Medical Records attached to Ms. Thiel's Affidavit (Filing No. 57), the plaintiff learned of his HIV condition after he notified the Jail medical department of swollen glands in his groin and neck on December 7, 2002. He was immediately scheduled for evaluation on December 10, 2002. Although the plaintiff denied feeling sick, loss of appetite or weight loss, and he did not exhibit enlarged spleen or liver, he reported night sweats and "risk behavior for HIV." Therefore, the medical staff took a blood sample and also arranged for a lymph node biopsy with Dr. Hoa of Lincoln Surgical, a medical group outside of the Jail. The results showed that the plaintiff is HIV-positive.

At the request of Dr. Fosnaugh, Kim Doht, RN, a nurse at the Jail, met on December 12, 2002, in a private area of the Jail with the plaintiff and explained the HIV test results, answered questions, arranged for an AIDS educator to meet with him, and requested that the plaintiff be kept under observation because of the devastating information he had just received. Nurse Doht then met with a volunteer AIDS educator retired from the Department of Health who stayed with the plaintiff while he told his girlfriend. Nurse Doht assisted. The plaintiff was "very weepy," and had many questions, which the AIDS educator addressed. Through December 20, 2002, the nurse and educator provided the plaintiff many educational materials about medications, HIV and AIDS, names of contact persons to reach for treatment, housing and assistance upon his release, the Nebraska AIDS Project, and a card reminding the plaintiff to go to his follow-up appointment with Lincoln Surgical on December 27, 2002 for lymph node removal. Shortly thereafter, the plaintiff left the Lancaster County Jail.

As evidence of deliberate indifference in 2002, the plaintiff points only to Dr. Fosnaugh's delegation to Nurse Doht the task of informing the plaintiff that he was HIV positive (Filing No. 60 at 5).

After his diagnosis and release in 2002, the plaintiff checked back into the Jail on September 26, 2003 (released 22 days later), November 7, 2003 (released 4 days later), January 27, 2004 (released 52 days, i.e., about 1½ months, later), March 30, 2004 (released 3 days later), June 8, 2004 (released 178 days, i.e., almost 6 months, later), January 29, 2005 (released 2 days later), February 25, 2005 (released the next day), March 13, 2005 (released the next day), April 27, 2005 (released the next day), May 9, 2005 (released 4 days later), June 9, 2005 (released 22 days later), and July 7, 2005 (released 175 days, i.e., almost 6 months, later). (See "Booking History, Wells, Aron David," Filing No. 56-2 at 3, Exhibit A to Affidavit of Melanie Koch.)

Upon each return to the Jail, the plaintiff acknowledged having been wholly or partially noncompliant with the treatment protocol for his condition. For much of 2003 and early 2004, the plaintiff lacked funds, personal identification, and other resources to obtain health care outside of jail. Upon each entry to the Lancaster County Jail, medical staff advised him again how to obtain assistance upon his release (Affidavit of Ina Thiel and attached records, Filing No. 57).

When Nurse Doht learned from the plaintiff in February 2004 that, because he owed $500 to his attending physician, Dr. Rademacher, the doctor would not see him, she contacted Dr. Rademacher's office and the Nebraska Aids Project ("NAP") and arranged to have a NAP representative visit the Jail to help the plaintiff with an application for NAP community assistance. She also got Dr. Rademacher to agree to treat the plaintiff, at least

6

while he was in County custody with the County responsible for payment (Filing No. 57-3 at 12-14). Nurse Doht expressed her view to the plaintiff that he faced a risk of becoming resistant to his medicines if he continued his on-and-off again pattern of medication (id. at 12). She noted in the plaintiff's chart her hope that getting the plaintiff started on his medications by Dr. Rademacher while the plaintiff was in custody, and then continuing thereafter with the financial assistance of NAP, the plan could work with "some follow through" by the plaintiff (id. at at 14).[2]

Unfortunately, the record is clear that the plan did not work. During the booking process upon the plaintiff's entry to the Jail on January 29, 2005, February 25, 2005, March 13, 2005 and June 9, 2005, the plaintiff reported that he had not taken medications at all during his periods of release from custody. On April 28, 2005, the plaintiff stated that he had taken his medications "for about two weeks" before his return to custody. On May 9, 2005, he informed booking that he takes his medications "on and off;" stated that "they aren't working;" and expressed his opinion that "I'm almost dead" (Filing No. 57-4 at 9-13). On each of the foregoing occasions, the intake staff placed the plaintiff on the list to see the doctor (id.).

On July 26, 2005, after reviewing the plaintiff's file, Dr. Fosnaugh issued a standing order in the plaintiff's chart that "due to perpetual medication noncompliance do not restart

---

[2]Again on June 15, 2004, the medical records indicate that Nurse Doht spoke with Dr. Rademacher's office to coordinate the plaintiff's care. The entry states: "They will only see him if he is in custody because he has for the 2nd time been sent to collections ...." (Filing No. 57-4 at 3.) The plaintiff contends that the conversations with Dr. Rademacher's office are irrelevant (Filing No. 60 at ¶ 15), but the plaintiff does not dispute the accuracy of those medical records notes (id. at ¶ 10, 15). The court does not view any effort by the medical staff at the Jail to obtain health care for the plaintiff, whether in or outside the Jail, as irrelevant to the issue of deliberate indifference.

7

HIV Rx due to risk of creating resistance" (id. at 13). That order constitutes a primary feature of the plaintiff's claim of deliberate indifference.

The plaintiff objects that no scientific support exists for Dr. Fosnaugh's medical opinion concerning the risk that the plaintiff could develop a resistance to some or all HIV medications from an on-and-off again pattern of medication. On the other hand, the plaintiff presents no evidence that Dr. Fosnaugh's medical opinion is unfounded or even controversial. At a minimum, the plaintiff has produced no evidence to suggest that Dr. Fosnaugh's concerns about the risk to the plaintiff of intermittent and interrupted HIV medication was anything but a genuine effort to protect the plaintiff. Even the plaintiff does not suggest that the doctor issued the order as a pretext to avoid treating the plaintiff.

The plaintiff also points to occasions when he sent kites to the medical department at the Jail and did not get in right away. On one occasion, his appointment with a physician had to be rescheduled because of a visit to court. The plaintiff's last period of incarceration at the Jail lasted from July 7 to December 29, 2005, during which his inmate interview requests ("kites") attached to Filing No. 65 (Declaration of Aron Wells) reflect acute anxiety about his health and resentment toward Dr. Masek for a remark which he considered insensitive.[3]

On September 3, 2005, in response to a letter from the plaintiff, Dr. Rademacher wrote the following to the plaintiff (Filing No. 61-2 at 3):

> You should have CD4 counts and HIV viral loads done at least every three to four months. If your CD4 count would fall below 200 cells/mcL, then you would qualify as having acquired immunodeficiency syndrome. The last CD4

---

[3] In December of 2005, Mr. Wells felt offended by Dr. Masek's comment: "Well, of course your lymph nodes are swollen, you're HIV positive."

8

count, I have in the chart, is from June 11, 2004 at 359/cmm with 25% CD4 cells. Your HIV viral load done by the Branched DNA Assay on July 19, 2004 was less than 75 copies per mL plasma, which is our goal.

Neither Dr. Rademacher nor the plaintiff provided a copy of that letter to any of the defendants or to anyone at the Lancaster County Jail. The defendants first learned of the letter in November of 2005 after the plaintiff began this litigation (Filing No. 56-7 at 4, Affidavit of Michael Thurber; Filing No. 57-14 at 2-3, Affidavit of Jeannette L. Masek, M.D.). Prior to then, Doctors Masek and Fosnaugh were unaware of Dr. Rademacher's views as expressed in the letter of September 3, 2005 (Filing No. 57-13 at 3, Affidavit of James A. Fosnaugh, M.D.; Filing No. 57-14 at 2-3, Affidavit of Jeannette L. Masek, M.D.). Upon reading the letter, Dr. Fosnaugh consulted Dr. Rademacher and arranged for all of the treatment recommended by Dr. Rademacher, as well as an appointment for the plaintiff with Dr. Rademacher (Filing No. 57-13 at 3, Affidavit of James A. Fosnaugh, M.D.). All treatment and testing goals were accomplished before the plaintiff's release on December 29, 2005 (Affidavit of Ina Thiel and attached records, Filing No. 57 at 14-17).

Notwithstanding his complaints about the medical services he received at the Lancaster County Jail, the plaintiff has not presented sufficient evidence to raise a genuine issue of material fact in support of his claim of deliberate indifference. The record of the plaintiff's care simply does not demonstrate a violation of Eighth Amendment or Due Process standards on which a jury could find in the plaintiff's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249; Johnson v. Hamilton, 452 F.3d at 972.

In this case, the plaintiff received frequent and continuing diagnostic care and medical treatment. He also received repeated education and assistance concerning how to obtain health care upon release from the facility. Because the Human

9

Immunodeficiency Virus is a serious condition, the plaintiff has established the objective part of an Eighth Amendment/Due Process claim.[4]

The plaintiff has not demonstrated a factual basis for the subjective part of an Eighth Amendment/Due Process claim, i.e., deliberate indifference. He has come forward with no evidence on which a jury could return a verdict in his favor finding that any defendant acted with a sufficiently culpable state of mind. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249; Johnson v. Hamilton, 452 F.3d at 972. Instead, the plaintiff shows no more than disagreement with the course of treatment provided to him.

A plaintiff who shows no more than his dissatisfaction with the course of medical treatment he received does not demonstrate deliberate indifference. See, e.g., Jones v. Norris, 310 F.3d 610, 612 (8th Cir. 2002): "At best, [the plaintiff's] allegations state a difference in opinion between himself and his doctors or allege a mistake in classification or treatment. Neither differences of opinion nor medical malpractice state an actionable Constitutional violation." Accord Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991):

---

[4]However, insofar as the plaintiff may be asserting a serious medical need for a particular regime of HIV medication, this case is reminiscent of Bender v. Regier, 385 F.3d 1133 (8th Cir. 2004), in which an inmate who tested positive for the Hepatitis C virus ("HCV") sued a physician for failing to treat his HCV with interferon before the inmate's release from the South Dakota State Penitentiary in February 2003. As the Eighth Circuit Court of Appeals explained: "[T]hough an HCV infection is unquestionably a serious medical problem, the Eighth Amendment issue is not whether the infection itself is a 'serious medical need,' but rather whether [the plaintiff] had a serious medical need for prompt interferon treatment." Id. at 1137.

The record in this case does not support a leap from the plaintiff's clearly serious HIV condition to any particular treatment regime. As the defendants note, even Dr. Rademacher did not recommend a resumption of the plaintiff's HIV medications when consulting with Dr. Fosnaugh in the period of November and December 2005. It was not until several months after the plaintiff's release, as the plaintiff mentions (Filing No. 60 at ¶ 25), that Dr. Rademacher resumed the plaintiff's HIV medications in February of 2006.

"Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment."  Accord Kayser v. Caspari, 16 F.3d 280, 281 (8th Cir. 1994) (disagreement with the course of treatment provided to an inmate is not a sufficient basis for an Eighth Amendment violation); Davis v. Hall, 992 F.2d 151, 153 (8th Cir. 1993) (*per curiam*) (pretrial detainee's disagreement or displeasure with his course of treatment or the medical judgment involved is not actionable under the Due Process Clause).  Viewed in the light most favorable to the plaintiff, the record does not contain sufficient evidence favoring the plaintiff for a jury to return a verdict in his favor. Thus, the defendants' motion for summary judgment will be granted.

THEREFORE, IT IS ORDERED:

1. That the defendants' Motions for Extension of the Summary Judgment Deadline (Filing Nos. 52 and 53) are granted;

2. That the defendants' Motion for Summary Judgment (Filing No. 55), is granted; and

3. That judgment will be entered accordingly.

DATED this 17th day of April, 2007.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge